## McCreary's Trust Estate.

Argued December 8, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Henry S. Drinker, Jr.,* of *Drinker, Biddle & Reath,* with him *Leslie M. Swope* and *Venable, Baetjer & Howard,* for appellant.

*Maurice Heckscher,* with him *Henry C. Remick, Charles Chauncey Savage, Jr., Marbury, Gosnell & Williams, Geoffrey S. Smith* and *Stanley L. Thornton,* for appellees.

*Henry C. Remick,* for appellee.

OPINION BY MR. JUSTICE LINN, January 3, 1938:

The question is whether the validity of future interests, within the requirement of the rule against perpetuities, shall be decided at this time or later[1] when subsequent administration of the trusts may require it. It was raised at the audit of the account of a surviving trustee under a deed of trust made April 13, 1880, by S. Alice McCreary, then residing in Philadelphia. She provided that the income should be paid to her for life subject to separate use and spendthrift trust provisions. The trustees were directed, at her death, to transfer

[1] See *Whitman's Estate,* 248 Pa. 285, 93 A. 1062; *Ewalt v. Davenhill,* 257 Pa. 385, 101 A. 756; *Lockhart's Estate,* 267 Pa. 390, 111 A. 254; *Warren's Estate,* 320 Pa. 112, 120, 182 A. 396.

the trust property "to such person or persons, in such proportions, for such estates and for such uses and purposes, as I may by my last Will and Testament or writing in the nature thereof, . . . direct, limit and appoint. And in default of such appointment, or as to any part of said estate as to which the appointment may for any reason fail to take effect, then upon the further trust to pay over, one-half of the net income . . . to said Clinton P. Paine [whom she was about to marry] for and during all the term of his natural life, [on a spendthrift trust] . . . And from and immediately after his decease, or in case he shall not survive me, then In Trust for the same uses and purposes as are next hereinafter provided for the remaining one-half of said estate hereby conveyed, to wit: In Trust to pay over the remaining one-half part of the net income . . . to and among any child or children I may leave me surviving, or the issue of any that may then be deceased, in equal shares. So that however, the issue of any deceased child or children shall take among them only the same share his, her or their parent would have taken if living. And as and when such child or children or the issue of any deceased, shall attain the full age of twenty-one years, then In Trust to convey, assign, transfer and pay over that share of the estate hereby conveyed in trust to the income of which he or she shall then be entitled, to him or her in fee simple absolutely. And upon the further trust that from and immediately after my decease, in default of any appointment by will or of my leaving me surviving said Clinton P. Paine and any child or children or the issue of any that may then be deceased, then In Trust to convey, assign, transfer and pay over [the trust property] . . . to and among such persons in such proportions and for such estates as would inherit the same had I remained a citizen of Pennsylvania and died therein intestate, unmarried and without issue, seised and possessed thereof in my own right absolutely."

Almost immediately after executing the deed, she married Clinton P. Paine. She survived him and died residing in Baltimore, Maryland, October 6, 1935, leaving a will probated there. The surviving trustee under the deed then filed its account. She left surviving two daughters, Mabel and Dorothy, both married, Mabel having one child and Dorothy three. In the 19th paragraph of her will, she appointed as follows: that the "property held in trust under said deed at the time of my death shall be conveyed, assigned, transferred, paid over and delivered unto said Tilghman G. Pitts and Safe Deposit and Trust Company of Baltimore, Trustees, and the survivor of them, and the successors of them, the same to be added to and for the purposes of this my Will considered as though it constituted part of the rest, residue and remainder of my own personal estate, and I do hereby give, devise and bequeath the same unto the said Tilghman G. Pitts and Safe Deposit and Trust Company of Baltimore, Trustees, to be held by them in trust for the same uses and purposes in all respects with the same limitations over and with and subject to the same powers as I have hereinbefore set forth and expressed in respect to the two trusts hereby created of my own residuary estate.

"Should, however, it be held by a Court of competent jurisdiction and of last resort in a proceeding in which the question of the validity of the trust created by this clause of my Will shall be of an issue, that said Trust is void for violating the rule against perpetuities then it is my Will and I direct that my Trustees or the survivor of them shall hold this portion of my estate in trust, to pay over and deliver the same to and among such person or persons as may at the time this trust shall be decided void as aforesaid, be entitled to receive the net income thereof, and in the same proportions, absolutely and free from further trusts."

In the 14th, 15th and 17th paragraphs of her will she created two trusts, each of half the residue, directing

the trustee in one case, to pay the income to her daughter Mabel, and, in the other, to her daughter Dorothy for life, subject to separate use and spendthrift trusts, "and [to quote one of the provisions] from and after the death of my said daughter to hold said trust estate in further trust for the child, children or descendants of my said daughter Mabel living at the time of her death, and to pay the net income therefrom to them, in equal shares, until the death of the last to survive of her children if more than one who may be living at the time of my death, and if only one then upon her death, the child, children or descendants of any deceased child of hers to take *per stirpes* and not *per capita* the share of income which his, her or their parent would if living have taken, and upon the death of the last to survive of said children of my daughter Mabel who are living at the time of my death, and if only one such child then upon her death, the trust shall terminate and the trust estate so held in trust shall be paid over and delivered free, clear and discharged of trust to the child, children and descendants of my said daughter *per stirpes* and not *per capita;* provided, however, that if my said daughter Mabel should leave surviving her only one child or descendants of one child, then and in that event the amount of the trust estate such surviving child or descendants of her shall be entitled to receive shall be only one-half of the 'whole corpus' thereof and income therefrom, the other one-half shall be added to and become a part of the trust created by this my will for the remaining one-half of my residuary estate and be subject to the terms of said trust as hereinafter created with respect to that said part of my estate for the benefit of my said daughter Dorothy Paine Pitts and her child, children and descendants living at the time of her death as therein directed, and shall be held by my Trustees for the benefit of said last mentioned trust, if said trust shall be still in existence, or if said trust shall have ended, then directly to the child, children or descendants

of my said daughter Dorothy Paine Pitts as I have hereinafter provided she and they shall share in the remaining one-half part of my residuary estate, and likewise, should my said daughter Mabel depart this life without leaving a child or children or descendants of a deceased child surviving her, then to hold the 'whole corpus' or principal of said trust estate upon the same trusts and for the same purposes as I have herein designated for the one-half of the 'whole corpus' in the event of my said daughter leaving only one surviving child or descendants of one surviving child."

In the 16th paragraph, she provided that if she died without leaving child or children or descendants of a deceased child or children surviving, or if leaving children or descendants they should die before reaching the age of 21 without surviving descendants, the residue should go "to such persons as would take my estate under the present existing laws of the State of Maryland as my heirs at law." The dominant intent expressed was to divide her estate among her descendants in the proportions specified and, in default of descendants, among her heirs at law as defined by Maryland law.

On the death of testatrix, equitable estates vested in the daughters Mabel and Dorothy entitling them to income for their respective lives protected by separate use and spendthrift trust provisions. As those interests were vested, the learned auditing judge, on the authority of the cases cited above, held it would be premature to pass on the validity of the subsequent remainders. On exceptions by the daughter Mabel, the majority of the learned judges of the court below, in an opinion by STEARNE, J., were of the same opinion. The amount for distribution was awarded to the trustees named in the will on filing a bond: see section 57 (a) Fiduciaries Act 1917, P. L. 447, 524, 20 PS section 991. The daughter Mabel appeals.

The decree would probably not have been questioned but for the alternative provision dealing with possible

invalidity and directing the trustee, in that contingency, to deliver the trust property to such person or persons as may then be entitled to receive the income. Appellant contends, in the brief, that "By the express provisions of the Will the life estate in trust is *changed* by the Settlor herself, on the conditions which have arisen, into a fee simple, absolute and 'free from further trusts.' "

In dealing with the alternative provision it is desirable, in ascertaining intention, to consider it with the similar provision quoted above, from the deed of trust: "in default of such appointment, or as to any part of said estate as to which the appointment may for any reason fail to take effect, then upon the further trust to pay over. . . ." There is no difficulty in separating the two trusts for the daughters for life from the subsequent limitations. The words in the deed "as to any part of said estate as to which the appointment may for any reason fail to take effect," show that the settlor had recognized severability and dealt with the contingency resulting from possible illegality in part and designated what should be done with the part or parts that could not take effect as appointed. She again recognized it in the 19th paragraph of the will where the appointment was qualified by the words "so far as the law permits, to make the same disposition thereof [of the trust property] as I have hereinbefore made of my residuary individual property." She appointed the trust property into her residuary estate and created what she called the "two trusts hereby created of my own residuary estate." We have two classes of cases: (1) those in which prior vested interests can be separated from those that are ineffective (*Whitman's Estate*, 248 Pa. 285, 93 A. 1062; *Ewalt v. Davenhill*, 257 Pa. 385, 101 A. 756; *Warren's Estate*, 320 Pa. 112, 182 A. 396) and (2) those in which it was considered impossible to separate them (*Johnston's Estate*, 185 Pa. 179, 39 A. 879, and cases following it).

The majority of the learned judges in the court below thought that the words "this portion," in the alternative provision in the will, were intended to mean the same thing as the words in the deed "any part of said estate as to which the appointment may for any reason fail to take effect." Both expressions relate to the same contingency. By "this portion" she did not, in all circumstances, mean the whole of the appointed interests, as appellant contends; she meant "any part of said [appointed] estate as to which the appointment may for any reason fail to take effect." And this view accords with the dominant purpose of the will. If we consider the general intention of the testatrix, as already described, her language leaves us in no doubt that she intended, as a separate and distinct step in the appointment, to create spendthrift and separate use trusts for both daughters for their respective lives; that, next, she provided for her daughters' children, desiring them, if Mabel died first, to share equally, and that the alternative provision relied on by appellant was intended to cure possible defects in limitations following the daughters' life estates. It is as if she had said: in exercising my right of appointment I have first designated, by name, certain persons to take certain future interests in the trust property; and, second, by description, I have designated other classes of persons to take such other interests as I have power to create within the permissible limits of the rule against perpetuities; but, if I have misunderstood how the application of the rule will affect the appointments, and thus have created interests not vesting in time, so much as cannot vest in time shall go absolutely to the "person or persons as may at the time this trust shall be decided void as aforesaid, be entitled to receive the net income thereof, and in the same proportions, absolutely and free from further trusts." By the word "trust" in the sentence just quoted, she did not mean the total of interests created by the appointment because in her will she said she was creating two

trusts, one for each daughter; the word "trusts" in the phrase "free from further trusts" was used in still another sense. By her designation of such persons "as may at the time this trust shall be decided void as aforesaid, be entitled to receive the net income thereof" she meant those entitled by her scheme of distribution to receive the income if the trusts were valid, but if the future interests then attacked were held invalid, those to whom she had given the income should take the principal instead. Indeed, it is by means of testatrix's designation, so understood, that appellant, as a party entitled to income under the trust for her life, contends that invalidity of subsequent estates now give her a fee in the trust of one-half of the property.[2]

The decree is affirmed, costs to be paid out of the fund for distribution.

---

[2] In appellant's brief, it is said: "It is our contention that the limitations over after the life estates to the daughters violate the Rule against Perpetuities, since it was not certain on October 6, 1935 (the date of Settlor's death) that they would vest within twenty-one years after the death of Settlor (the only 'life in being' in 1880); and therefore the alternative appointment next described becomes operative, and gives the fee to the daughters in substitution for the life estates."