## Harrah Estate.

Argued November 21, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Philip A. Bregy,* with him *Edmund B. Spaeth, Jr.,* and *MacCoy, Brittain, Evans & Lewis,* for appellants.

*Richard E. McDevitt,* with him *Philip H. Ward, 3rd,* and *Montgomery, McCracken, Walker & Rhoads,* for appellees.

*Sheldon F. Potter,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY:

This is an appeal from the decree of the court below concerning a certain schedule of distribution in the above entitled estate. The testator died on February 18, 1890, survived by five lines of descendants. His will, dated January 31, 1890, is in the form of a series of pecuniary legacies of unequal amounts, one legacy for each line of descendants. The residue of the estate is then left proportionately to the pecuniary legatees. Some gifts were outright and some were in trust. The gift for the line of descendants represented by his son, George Harrah, was a trust to pay the income to George for life, then to pay ⅓ of the income to George's widow for life and subject to the widow's interest to pay the entire in-

come to George's children during the life of each of them "and upon the death of any of such children, to distribute his or her share of said principal sum, according to the intestate laws of Pennsylvania". The Rule against Perpetuities is involved in this case.

Paragraph III of the will reads as follows: "I give and bequeath to my son Charles J. Harrah, Junior and the Philadelphia Trust Safe Deposit and Insurance Company, their heirs, successors and assigns, the sum of One hundred and fifty thousand ($150,000.) Dollars. In Trust to pay the net income thereof to my son, George W. Harrah, during his natural life, and at and immediately after his death, to pay one-third of said net income to his widow during her life, and two thirds thereof to his children, during their respective lives. And upon the death of said widow, to pay said one-third also of said income to said children, and upon the death of any of such children, to distribute his or her share of said principal sum, according to the intestate laws of Pennsylvania."

The court below adopted the appellees' view of this case, that is, that the gifts in remainder to the heirs at law and next of kin of Julius T. Harrah are void under the rule against perpetuities. Appellees say: ". . . it is not difficult to imagine that [the testator's] son, George, might have children, born after the death of the testator, who might, quite conceivably, have children born more than twenty-one years after the death of the last of George's children who were born in the lifetime of the testator. To the extent, therefore, that the gift in remainder contemplates, among its possible objects, such great-grandchildren and even more remote issue of the testator, it is, by its terms in violation of the rule against perpetuities and consequently void."

Appellants contend that "since all of the children of testator's son, George, including Julius T. Harrah, were born in the lifetime of the testator and since there were,

in fact, no children born to George after the death of the testator, the gifts in remainder do not violate the rule against perpetuities. They concede that the will, by its terms, admits of possible gifts in remainder to ineligible persons, but contend that since they have not eventuated, the gifts to persons who meet the tests of eligibility under the rule should not be permitted to fail."

Paragraph 12 of the will reads as follows: "All the rest residue, and remainder of my estate, of whatever character, and wherever situate, I give, devise, and bequeath to the legatees named, and in the same manner upon the same trusts, and in the same proportions as I have heretofore devised the bulk of my estate in the first seven paragraphs of this will, . . ."

Testator's son George, the primary cestui que trust, died August 13, 1908, and his widow, Thomazinha, died July 16, 1916. Four children survived them, all of whom were born prior to the execution of the will and all of whom were alive when testator died. One of the four children, Julius, died on March 24, 1948, leaving three children. As to the three-fourths share of the trust, it continues for the benefit of the three living children of George W. Harrah. The remaining one-fourth share, as to which the trust terminated at the death of Julius, is the share now in controversy.

The Auditing Judge says: "After the death of testator's son, George, and of his widow, the entire income from the $150,000 trust goes to his children. The will then provided: '. . . and upon the death of any of such children, to distribute *his or her share* of said principal sum, according to the intestate laws of Pennsylvania.' (Italics supplied by the Auditing Judge) . . . disposition of the principal 'according to the intestate laws', in such a gift, is tantamount to a gift of the principal in remainder to the heirs at law and next of kin, as determined by the intestate laws, of the person or persons whose 'shares' thus become the subject of the prescribed

method of distribution: Schoch's Estate (No. 2), 271 Pa. 165 (1921); Schell's Estate, 30 D. R. 335 (1921). It is as though testator had said: '. . . to distribute *his or her share* of said principal (to *his or her* heirs at law) according to the intestate laws of Pennsylvania', i.e. to the heirs at law of the children of testator's son, George, at their respective deaths, and the Auditing Judge so finds." (Italics supplied by the Auditing Judge)

The Auditing Judge, after citing the above referred to argument of appellants' counsel, points out that: "It has frequently been held in Pennsylvania that where succeeding estates in futuro are limited one upon another beyond the permissible period under the rule against perpetuities, such of those estates as must by every possible interpretation vest within the limits of the rule may be sustained, even though the vesting of succeeding estates may transgress the rule, unless the principal purpose of the testator appears to be the postponement of ultimate vesting in remainder beyond the limits of the rule. Thus, life estates, which inevitably must vest in the period of a life or lives in being and twenty-one years, are sustained, however remote the vesting of remainders limited upon them, if the primary object of the creation of the trust appears to be merely to insure the eligible life tenants the benefits of the estate for their lives: Lawrence's Estate, 136 Pa. 354, 20 A. 521 (1890); Whitman's Estate, 248 Pa. 285, 93 A. 1062 (1915); Jones's Trust Estate, 284 Pa. 90, 130 A. 314 (1925); McCaskey's Estate, 293 Pa. 497, 143 A. 209 (1928); Kern's Estate, 296 Pa. 348, 145 A. 824 (1929); Hecht's Estate, 316 Pa. 12, 173 A. 324 (1934); McCreary's Trust Estate, 328 Pa. 513, 196 A. 25 (1938); Quigley's Estate, 329 Pa. 281, 198 A. 85 (1938); Kamerly Estate, 348 Pa. 225, 35 A. 2d 258 (1944); Schmick Estate, 349 Pa. 65, 36 A. 2d 305 (1944)."

He adds: "All of these authorities admittedly support the argument that were the gift is to a class some of

whose members may, under the rule, be eligible and some of whose members may not be eligible, the gifts to eligible members may be sustained and only the gifts to ineligibles must be struck down. Moreover, the Estates Act of 1947, Section 4(b) now provides that the validity of limitations in remainder shall be 'measured by actual rather than possible events' and would, if applicable to the present case, clearly sustain the remainders to all of the children of testator's son, George, since they were all, in fact, born before the date of the death of the testator. Unfortunately, however, the testator died in 1890, and the Act of 1947 does not apply. We are therefore obliged to view the possibilities in this case under Pennsylvania law as it stood prior to the enactment of the Estates Act and to apply the rule strictly according to its exact requirements." He then cites the case of *Friday's Estate,* 313 Pa. 328, 170 A. 123, in which this Court said, inter alia: "The rule against perpetuities . . . should be applied boldly . . . If the period testator has chosen may extend beyond the limits fixed by the rule, his provisions are void; but if that period may not, under any circumstances, by the occurrence of events, extend beyond those limits, testator's bequests are valid."

The auditing Judge then says that "the Supreme Court has consistently held that where gifts in remainder to a class are void as to any member of the class, they are void as to all members of that class: [citing cases]" He claims that this is the answer to the Restatement [post] and also to the English case of *Cattlin v. Brown,* 11 Hare 372 (Ch. 1853), and that "They may represent the state of the law in other jurisdictions—may even represent the most desirable state of law. But they do not, perhaps unfortunately, represent the state of the law in Pennsylvania as it applies to the present case."

The auditing Judge therefore concludes that "the gifts in remainder to the heirs at law and next of kin of Julius T. Harrah are void under the rule against per-

petuities. They therefore fall into the residuary estate, and as the gift thereof is, by its terms, identical with the original trust of $150,000, an intestacy results with respect thereto and the gift over upon the death of Julius T. Harrah passes to the next of kin of the testator. We reach this conclusion regretfully because it not only frustrates the intention of the testator, but results in an awkward and diffused distribution to widely scattered persons, some of whom are, no doubt, strangers to the testator's blood, instead of to the three children of the deceased life tenant, who are the natural objects of testator's bounty and were obviously intended to be the recipients of the share from which their deceased parent received the income."

The Court's opinion, upon the exceptions to the adjudication, said, inter alia: "We share in his [the Auditing Judge's] regrets that the application of the rule in this case results in an award to the testator's next of kin rather than to those of the deceased grandchild. The change of public policy evinced by the Estates Act of 1947, Section 4, wherein the rule of remoteness must now be measured by actual rather than possible events, so far as instruments becoming effective after January 1, 1948, are concerned, makes our decision the more regrettable, but only the Supreme Court can overrule the former decisions which control us, and so bring about a desirable uniformity of construction that could be applied to all instruments, whether effective prior to or after January 1, 1948." The adjudication was then confirmed absolutely.

We find no reason in logic or in public policy why the whole remainder should be adjudged void because the remainder to the heirs of George's hypothetical child born after testator's death would violate the rule against perpetuities. The remainder of the shares held for such of George's children as were living at the time of his death are clearly valid. We have upheld life estates

as valid even though the remainder was found to be invalid. In *Kern's Estate,* 296 Pa. 348, 145 A. 824, the question arose as to whether certain provisos in a will breached the rule against perpetuities "since it might have eventuated that the power of appointment vested in female grandchildren could not, in some instances, have been exercised until a period had elapsed sufficient in length to outlaw the power". We said: "The weakness in appellants' contention is in treating the testamentary provisions for decedent's daughters and those for his granddaughters as though they were inseparable. Gray, in his 'Rule against Perpetuities' (3d ed., p. 342) states, 'When gifts are made to several persons by one description, but the amount of the gift to one is not affected by the existence or nonexistence of the others, then the gifts are separable'; again he states (p. 343), 'Although the amount of each legacy is dependent upon the number of legatees, yet, if this number must be determined within the required limits, the gifts are separable'; still again (p. 345), 'When, on a gift to a class, the number of shares is definitely fixed within the time required by the rule against perpetuities, the question of remoteness is to be considered with reference to each share separately.'"

Section 389 of the Restatement of the Law of Property reads as follows: "When the provisions of a dispositive instrument include (a) a limitation in favor of a class under which membership in the class can increase, but can neither increase nor decrease for longer than the maximum period described in §374; and (b) a further limitation, with regard to each of the shares in which the members of the class described in Clause (a) have been given interests, in favor of the children, or issue, or heirs, of such class member, or in other language of similar import, then the attempted disposition is treated as consisting of separable limitations with respect to the distinct shares of the several members

of the class described in Clause (a), and the validity of the disposition, attempted with respect to each such severed share and described in Clause (b), is determined separately under the rule against perpetuities. Illustration: 1. A, having assets worth $250,000, makes an otherwise effective devise of them to Trustee B, to pay the income to C (brother of A) for life, and after the death of C, to pay the income in equal shares to the children of C for life, and, on the death of each of these children of C, to distribute the corpus to the descendants of such deceased child per stirpes. At the time A dies, C has two children D and E. More than a year after the death of A, C had a third child F. The class gift of income in favor of the 'children of C' is valid (§387). The attempted ultimate gift of corpus is to a series of classes, one for each child of C. The disposition is divided into three separate limitations, one for D and his descendants, a second for E and his descendants, and a third for F and his descendants. Determining separately the validities of these three limitations under the rule against perpetuities, the first two are completely valid and the third is invalid as to its attempted disposition of the corpus to a group not ascertainable until the end of a life (F) not in being when A died."

In the instant case the testamentary disposition involves a class gift to life beneficiaries, which is clearly valid, and separate remainders over, of that portion of the corpus for which each life beneficiary had received the income. All of the children of testator's son George, including Julius, were born in the lifetime of the testator, and since, in fact, there were no children born to George after the death of the testator, it would be an extreme and socially unwise application of the Rule against Perpetuities to hold that all the gifts in remainder were void as violative of that rule.

Appellees argue that under the Law of Pennsylvania the validity of prior limitations *is* affected by the fact that ultimate limitations may transgress the Rule

against Perpetuities and that the contention that remainders that do not transgress the Rule may be separated and sustained, in spite of the fact that they co-exist with remainders that might transgress the Rule, is contrary to the decisions of this Court.

The appellants' brief correctly sets forth: "The great majority of Pennsylvania cases dealing with class gifts involve Leake v. Robinson, [2 Mer. 363, 35 Eng. Reports 979 (1817)] situations—i.e., a single remainder to a single class which remains open until the death of the survivor of the class of secondary life tenants. Kountz's Estate (No. 1), 213 Pa. 390 (1906); Wanamaker's Estate, 335 Pa. 241 (1939); Rice's Estate, 16 D. & C. 123 (1929); Miller's Trust, 48 D. & C. 659 (1943). In others, the life estates are upheld and the decision on the remainders postponed, so that the question is not reached, as in Whitman's Estate, 248 Pa. 285 (1915) and others of the genus of Quigley's Estate, 329 Pa. 281 (1938). Smith's Appeal, 88 Pa. 492 (1879), deals with powers of appointment and presents facts where a special branch of the rule of Cattlin v. Brown could have been applied, although it was not argued."

Appellants also correctly point out that in *Kern's Estate*, supra, this Court recognized with approval the principle set forth in *Cattlin v. Brown,* 11 Hare 372, 68 Eng. Reports 1319 (1853), and that the ratio decidendi was the same in each of these two cases. In the *Cattlin* case the court said, inter alia: ". . . where there is a gift or devise of a given sum of money or property to each member of a class, and the gift to each is wholly independent of the same or similar gift to every other member of the class, and cannot be augmented or diminished whatever be the number of the other members, then the gift may be good as to those within the limits allowed by law. This was settled in the case of Storrs v. Benbow (2 Myl. & K. 46) . . ."

There are cases in other jurisdictions which sustain the position the appellants contend for in this case. In *Albert v. Albert,* 68 Md. 352, 12 A. 11 (1888), the court held that in those cases where it cannot be ascertained what is the share of each member of the class, the gift is void as to all, but when the children of each child form a separate class, the share of each class is separately ascertainable. The gifts to those in the separate class is valid. See also *Bowerman v. Taylor,* 126 Md. 203, 94 A. 652 (1915).

In *Hills v. Simonds,* 125 Mass. 536 (1878), there was a gift of income to A for life, then to the children of testator's brothers and sisters equally for their lives "and after their decease to be equally divided among their children or their legal representatives." It was held that the remainders following the deaths of nephews and nieces who were actually alive when the testator died were good even though it was admitted that the remainders following the deaths of nephews and nieces born after testator's death were necessarily invalid. The court cited and approved Leake v. Robinson but said that "In such cases, the person incapable of taking may be the sole representative of the class at the time the estate is to vest, and thus it is possible, at the death of the testator, that the whole estate may vest at a period too remote. But, in the case at bar, the limitation over upon the death of the several nephews and nieces, is not a devise to a single class, of which a child of an afterborn nephew or niece may be a member. It is, in legal effect, equivalent to several and distinct devises to different classes [Cattlin v. Brown]."

In *Dorr v. Lovering,* 147 Mass. 530, 18 N. E. 412 (1888), where the facts were strikingly similar to the facts in the instant case, the court followed the rule laid down in the English case of *Cattlin v. Brown.* The same rule has been applied in the following cases: *Shepard v. Union & New Haven Trust Co.,* 106 Conn. 627, 138 A.

809 (1927); *Lowry v. Muldrow,* 8 Rich Eq. 241 (S. C. 1856). See also Judge GOODRICH's opinion in *Smith's Estate v. Comm.,* 140 F. 2d 759 (1944).

That the decisions of this Court have, in applying the Rule against Perpetuities separated valid life estates from invalid remainders is conceded. In *Quigley's Estate,* 329 Pa. 281, 198 A. 85, we said: "Ordinarily the validity of prior limitations is not affected or disturbed by reason of ultimate ones which transgress the rule against perpetuities. There is a well nigh continuous current of authorities in Pennsylvania establishing this principle: (citing numerous cases)." In that case we cited the following from *McCaskey's Estate,* 293 Pa. 497, 508, 143 A. 209, saying that it would be better to inquire whether " 'the striking down of the void gifts would, in vital matters, so emasculate his (the testator's) plan of distribution, as to render it reasonably certain he would not have made the will in the way he did had he known it could not be sustained in the respects in which it must be set aside.' " We added: "Such a test makes the question analogous to the familiar subject whether the remaining portions of a statute should be held valid and in effect after part of the act has been declared to be unconstitutional." We also said in *Quigley's Estate:* " . . . none of the factual circumstances (here) exist which would justify a judicial invalidation of the prior life estates as being inextricable parts of a frustrated testamentary purpose," and that to separate these bequests would not defeat "the organic plan of the testator." The separability which we thus applied is sometimes referred to as "horizontal separability."

The rationale of the *Quigley* case applies here. There is no reason why, in determining whether a testamentary provision is void as to a remainder to the heirs of a hypothetical child of the cestui que trust, which child might possibly have been born after the death of the testator whose will created the trust, this court should

not apply the doctrine of separability as to the remainders of the heirs of each child of the cestui que trust, which later children were living when the testator died. In upholding those remainders which are legal because not violative of the rule against perpetuities we are not defeating the "organic plan of the testator." That separation of legal remainders from illegal remainders may be called *"vertical* separability."

There is no legal compulsion for us to sustain (and it would be unjust if we did so) the attack which is here made upon the whole remainder under testators will because (1) a gift of income to George's "children" would have included such a child born after the testator's death and (2) the remainder to the heirs of that *hypothetical child* is violative of the rule against perpetuities. We decide that the successive remainders provided for in the will of Charles J. Harrah to the heirs of the various children of his son, George W. Harrah, living when the testator died *are separable* from the remainder to the heirs of a possibly "after-born" child of George W. Harrah.

The decree of the court below is reversed and the record is remitted for further proceedings in accordance with this opinion, costs to be paid out of the estate.

PER CURIAM, April 10, 1950:

The foregoing opinion was prepared by the late Chief Justice MAXEY before his death on March 20, 1950. It is now adopted and filed as the opinion of the Court.