**Morton Estate**

Before Klein, Adm. J., Bolger, Saylor and Shoyer, JJ.

ADJUDICATION

BOLGER, J., April 10, 1970.—Thomas G. Morton died May 20, 1903, leaving a will by which he be-

queathed his residuary estate to his trustees, in trust, to pay two-thirds of the net income to his wife, Ann Morton, for life and one-third to his daughter, Bertha St. C. M. Gittings, for her life. Upon the death of Bertha, the trustees were directed to pay her share of income equally to her children for their respective lives and upon the death of each to pay the principal from which the one so dying had been receiving income to his or her issue per stirpes. Testator further directed that upon the death of his wife, her share of income be paid equally to his daughters, Helen K. Morton and Isabella M. Jenks, for their lives. Upon their respective deaths, it was directed that the income be paid to the children of each for their respective lives with remainder over to their issue per stirpes as in the one-third portion of residue set aside for Bertha St. C. M. Gittings.

Testator was survived by his aforementioned wife and daughters as well as by two sons, Thomas S. K. Morton and Arthur V. Morton.

Testator's widow, Ann K. Morton, died March 30, 1907, leaving a will wherein she appointed her two sons executors.

Helen K. Morton died June 26, 1927, without issue, leaving a will wherein she appointed Arthur V. Morton executor.

Bertha St. C. M. Gittings died October 8, 1943, survived by five children; viz., Thomas M. Gittings, Samuel E. Gittings, Isabel S. Gittings, Clair G. Brady and James S. Gittings. With the exception of James S. Gittings, who was born November 20, 1905, all of Bertha's children who survived her were born prior to testator's death and survive. James S. Gittings, whose death on August 5, 1968, is the reason for the filing of this account, was survived by one son, James St. C. Gittings, who attained majority on August 15, 1969.

Isabella M. Jenks died July 30, 1955, survived by three children, viz., Thomas S. Jenks, Morton Jenks and Ann W. J. Lyne. With the exception of Ann W. J. Lyne who died July 13, 1959, without issue, the children of Isabella M. Jenks survive. As in the case of James S. Gittings, Thomas S. Jenks and Morton Jenks were born after the death of testator.

By decree dated April 24, 1969, Austin M. Lee, Esq., was appointed guardian ad litem for existing minors and trustee ad litem for all the unborn descendants of Isabella M. Jenks and Bertha St. C. M. Gittings and for all other unascertained interests. For reasons which are made more apparent hereinafter, that appointment was modified by decree dated January 12, 1970, to limit the representation of the guardian and trustee ad litem to the minor unknown and unascertained interests in the lines of descendants of testator through Isabella M. Jenks only.

This case presents a difficult question concerning the rule against perpetuities. At the original audit of this account, counsel for the accountant, on the basis of information then available, believed and so informed the court that James S. Gittings had been born prior to the death of testator. On that assumption, the court was requested to award the share of principal from which he had been receiving income to his son, James St. C. Gittings. No party in interest then objected to the proposed distribution. The conclusion that James St. C. Gittings was entitled to distribution was prompted by Harrah Estate, 364 Pa. 451 (1950). In that case, testator left a portion of his estate in trust to pay the income to his son for his life and upon his death to his son's children (subject to his widow's life estate in one-third) during the life of each. Testator directed that upon the death of a grandchild, that grandchild's share of principal be paid to his intestate heirs. Testator was survived by his son and

four children of his son. No other children were born to his son after testator's death. On appeal from the determination of the lower court that the gifts in remainder violated the rule against perpetuities because testator's son could have had children born after testator's death who, in turn, could have had children born more than 21 years after the last of testator's grandchildren who were born in testator's lifetime, the Supreme Court held that the gift in remainder to the heirs of the hypothetical afterborn grandchild could be separated from the remainders of the heirs of each grandchild who was living when testator died. The court thus upheld the validity of the remainders to the heirs of testator's grandchildren who were born in his lifetime. The doctrine thus enunciated is called "vertical separability." Following Harrah, counsel for the accountant argued that even though Bertha St. C. M. Gittings could have had children born after the death of testator who, in turn, could have had children born more than 21 years after the death of her children who had been born in testator's lifetime, such event had not, in fact, occurred and the line of the hypothetical afterborn child could be separated vertically from the valid interests. The guardian and trustee ad litem concurred in this position.

As heretofore stated, James S. Gittings was born November 20, 1905, more than two years after testator's death. This fact, however, did not come to light until after the original audit. The court was advised of this misapprehension with respect to the facts and the audit was continued.

At the time of his original appointment, one of the wards of the guardian ad litem was James St. C. Gittings; he is no longer a minor, having attained majority, as heretofore stated, on August 15, 1969. The guardian and trustee ad litem, by the terms of his original appointment, represented the minor and un-

ascertained interests in both the Isabella M. Jenks and Bertha St. C. M. Gittings lines. However, because James St. C. Gittings is no longer a minor and all of Bertha's children except James S. Gittings, father of James St. C. Gittings, were born before testator's death by reason of which fact the remainders over upon their respective deaths to their issue may be saved by Harrah Estate, the wards of the guardian and trustee ad litem were limited to those within the Isabella M. Jenks line, since the two surviving sons of Isabella were born after testator's death. In other words, had the terms of the original appointment continued, the guardian and trustee ad litem may have had to represent conflicting interests, since it is possible that by the invalidation of the remainder interest of James St. C. Gittings the issue of Isabella, being in the same position as James St. C. Gittings, would have established in this case a principle of law contrary to their interests while the issue of Bertha, with the exception of James St. C. Gittings, would realize some gain by possible participation in some way in the portion of principal passing to testator's intestate heirs as a result of the invalidation of James St. C. Gittings' remainder interest. We need not now decide whether the remainder to Bertha's issue not in the James S. Gittings line are valid because the preceding and continuing life estates do not violate the rule: Quigley's Estate, 329 Pa. 281 (1938). We note, however, that Harrah Estate is not on all fours factually and may not save such remainders; i. e., Harrah separated out remainders to hypothetical lines but not actual lines. But we further note that the case law as illustrated in the doctrines of horizontal and vertical separability precludes the invalidity of a remainder in one line from "infecting" the remainder in lines which, when considered alone, cannot violate the rule.

Does the fact that James S. Gittings was born after testator's death result in his son's remainder interest violating the rule against perpetuities? We reluctantly conclude that it does. In all important facts but one this case is identical to Harrah, supra. The single critically different fact is that here we are not dealing with a hypothetical afterborn grandchild but one who is actually afterborn. James S. Gittings was born to Bertha St. C. M. Gittings after testator's death, and, therefore, the remainder to his issue need not have vested within the period permitted by the rule. This fact alone constrains us to declare the remainder to be violative of the rule. If the actualities test is applied and if we cannot look outside the James S. Gittings line for lives in being, the remainder to James St. C. Gittings has not, in fact, vested within a life in being and 21 years for the reason that Bertha St. C. M. Gittings, the last life in being in the line, died October 8, 1943, more than 21 years prior to the death of her son, James S. Gittings. However, the actualities are not controlling here; it is the possibility of a vesting occurring more than 21 years after the termination of the lives in being which renders this remainder void.

The inequities involved in this result are apparent. The remainder to James St. C. Gittings, while violative of the rule and thus void, has, in fact, vested prior to the remainders which are apparently not violative of the rule. The rule against perpetuities supposedly promotes the alienability of property interests yet in this case the interests which probably do not violate the rule will, in fact, vest later than the interest which does violate it. The result is thus not in harmony with the policy.

On the assumption that the remainder is invalid, the guardian ad litem, because of the inequity, urges the application of a noncharitable cy pres power which he

perceives the court to possess. We doubt the existence of such a power: Dreisbach Estate, 384 Pa. 535 (1956). Courts of equity and the Orphans' Court Divisions, in particular, in adhering to what is considered the testator's intentions will terminate trusts for failure of purpose or change and reduce gifts which are illegal to make them legal. The basis for so doing is not any noncharitable cy pres power but the general power of equity courts to conform a gift as nearly as legally possible to the intentions of testator. In this case, testator has expressed his intention most clearly but, unfortunately, his scheme of distribution is violative of the rule. The guardian ad litem would have us award the James S. Gittings share of principal to James St. C. Gittings on the ground that this disposition would adhere to testator's intentions. We agree that such an award would correspond exactly to testator's intentions. It would also accomplish by indirection what cannot be directly done. The principal from which James S. Gittings had been receiving income must be awarded to the intestate heirs of Thomas G. Morton in accordance with the intestate laws applicable at the date of his death. . . .

And now, April 10, 1970, the account is confirmed nisi.

————

*Austin M. Lee,* guardian and trustee ad litem, for exceptants.

*John R. Suria* and *Saul, Ewing, Remick & Saul,* contra.

## OPINION SUR EXCEPTIONS
## TO ADJUDICATION

SHOYER, J., September 23, 1970.—The guardian-trustee ad litem for the Jenks line has filed exceptions to the holding of the learned auditing judge that there

is now an intestacy as to the principal of the share from which James S. Gittings was receiving income because the said life tenant was born two years after the death of his grandfather, Thomas G. Morton, the testator.

James St. C. Gittings, son and only child of James S. Gittings, has filed no exceptions. He is the one who is actually being deprived of the principal sum which will now be distributed to the intestate heirs of testator; namely, the latter's surviving spouse and his two sons and three daughters. These intestate heirs, all of whom were mentioned in the will, although the sons were excluded from the residuary estate,* are all now dead.

The factual background of this estate is fully set forth in Judge Bolger's adjudication and need not be restated. We merely emphasize the fact that the exceptions present a strong emotional appeal because James S. Gittings has died before any of his brothers and sisters who are "lives in being" and who have living issue whose future claims will probably be validated. The void share thus becomes alienable sooner than the ones which are apparently valid. The rule against perpetuities is aimed at possibilities, is not validated by actualities and will be "rigorously" applied whenever judicial construction of the instrument establishes a fettering of property beyond the prescribed limits: Newlin Estate, 367 Pa. 527 (1951). This grim inevitability the learned auditing judge ruled, albeit reluctantly, was vividly illustrated by the present situation.

Both Mr. Lee, the guardian-trustee ad litem, and

---

* We are informed that Thomas G. Morton and his wife had agreed that he would leave his residuary estate to descend through their daughters, Helen Morton, Bertha Gittings and Isabel Jenks, and Mrs. Morton would (and did) provide reciprocally for the sons in her will.

Mr. Suria, for certain remaindermen in support of the adjudication, have filed comprehensive briefs which have fully analyzed the problem and have been most helpful to the court en banc.

Judge Bolger based his holding on the doctrine of "vertical separability" which was adopted by our Supreme Court in Harrah Estate, 364 Pa. 451 (1950). To reduce the frustration of testamentary intent which results from every application of the rule against perpetuities, the courts have validated those parts of an attempted disposition which could be separated, as where the instrument separates an aggregate of assets into shares and disposes of the shares separately: A.L.I. Restatement, Property §376. Where the limitations are to successive classes, and the number of persons in the primary class may be surely ascertained within the period of the rule, this ascertainment of number establishes the size of the shares subject to further disposition. Valid dispositions of corpus will be separated from the invalid shares and not infected by the invalidity of the latter: Restatement, Property §389. See Bregy, Estates Act, §4(a) and (b), ¶8(d), pp. 5280-1, ¶8(e), p. 8126. Since the only bad remainders in Harrah were purely *hypothetical,* our Supreme Court had no difficulty in upholding all the remainders as valid. This separation into classes was said to be sound both "in logic" and "in public policy," and failure to make such separation would have been "socially unwise."

The guardian-trustee ad litem persuasively contends that in recent years our Supreme Court approach has tended toward "actualities" and away from the literal, ruthless application of the rule. Harrah Estate, itself, is not supportive of this argument, however, because the principle of separability there accepted in 1950, had been adopted in the English

case of Cattlin v. Brown, 11 Hare 372, 68 Eng. Rep. 1319, decided in 1853.

The Restatement of the Law of Property §389, had incorporated this rule in 1944. See Smith Estate, 73 D. & C. 38, 40 (1950).

Our legislature approved the "wait and see" approach in the Estates Act of April 24, 1947, P. L. 100, §§4 and 5, 20 PS §§301.4 and 301.5, but did not make this new guide rule retroactive. In line with the public policy thus ascribed to our highest court and our General Assembly, Mr. Lee urges us to adopt a broader and more liberal interpretation of "lives in being." Use of the lives of the four children of Bertha who were born in testator's lifetime and still survive, as measuring lives, would enable us to hold that the remainder interest of James S. Gitting's share vested within the limits of the rule.

Once the shares have been separated by application of the Harrah rule, however, we are not free to select lives other than those proceeding directly through the stem line (Bertha) to establish validity within the rule. See Restatement, Property §376 *d* and §389 *e*. Gray, The Rule Against Perpetuities, Third Ed., 1914, §391, states that the cases on independent gifts, section 389, "as well as the reason of the thing, show that when, on a gift to a class, the number of the shares is definitely fixed within the time required by the Rule against Perpetuities, the question of remoteness is to be considered with reference to each share separately." As to the share of any person who is born into the primary class after the instrument speaks, "this person is not a 'life in being,' . . . and hence any further limitation as to such share, which leaves uncertainties to be resolved at the end of such life, is likely to violate the rule against perpetuities": Restatement, Property §389 *e*. As explained by our

late colleague, Judge Hunter, with his customary clarity: ". . . As to the separated share of each grandchild born in the lifetime of testator, it is a simple life estate [with remainder to his issue] . . .": Smith Estate, supra, p. 41. Mr. Suria has theorized that for the share of after-born grandchildren the same rule is applicable, and a vesting of this remainder within the lifetime of Bertha, or 21 years after her death, would bring the vesting of the corpus within the prescribed period. The invalidity of the remainder is stated as an absolute without exception in *Illustration* No. 1 (pp. 2286-87) appended to section 389 of the Restatement of Property. Possible exceptions, based on alternative measurements not expressly limited, must await specific decisions in actual cases as they arise.

The guardian-trustee ad litem urges that under general principles of equity, this court has noncharitable cy pres powers which could save this remainder for James St. C. Gittings. We share the doubts of the auditing judge that we have such power. The cemetery trust cases relied on as precedents by the guardian were decided under Act No. 107 of May 22, 1891, P. L. 119, 9 PS §4, repealed, which expressly declared such dispositions "to be made for charitable use."

Equitable relief is also requested on the alternative ground of failure of purpose. Where the remaindermen have been allowed to benefit in such cases, however, it has been upon a different principle, viz., the court has been following the polestar of testamentary construction. The court is there endeavoring to carry out testator's intent, and the failure which has been remedied has not resulted from any violation of the rule against perpetuities. When perpetuities have been declared invalid, intestacy has traditionally determined the distribution. As stated above this

result has been applied ruthlessly in defiance of the testator's intent, as though to penalize testator for a willful violation of public policy.

Looking at this family tree 67 years after testator's death, this is the picture that we see coming into focus. Of a total of nine grandchildren, descended through two of testator's three daughters, it seems that five will be survived by issue, and only two of these five lines will comply with the rule against perpetuities. As a result of this factual situation, a further question may be presented in the future arising from the problem posed by Comment f of the Restatement, §389, and discussed in Edwards Estate, 407 Pa. 512. We refrain from expressing any opinion at this time concerning this question.

For the above reasons, in addition to those expressed by the learned auditing judge, the exceptions are dismissed, and the adjudication is confirmed absolutely.