## Lewis Estate

*J. Pennington Straus, Donald M. Schaeffer,* and *Janet K. Pilling,* of *Schnader, Harrison, Segal & Lewis,* for accountant.

*Frank G. Cooper,* of *Duane, Morris & Heckscher,* for certain parties in interest.

*Neil E. Jokelson,* guardian and trustee ad litem, p.p.

PAWELEC, *A.J.,* December 30, 1976—This trust arose under the will and Item First of the second codicil to the will of Lawrence Lewis, who died on September 15, 1915, whereby the testator gave four-twentieths of his residuary estate to Francis A. Lewis, in trust, to pay the net income to the testator's niece, Maria L. Barroll, for life, and upon

her death to pay the income in equal shares to her then living children and to the issue of deceased children, per stirpes. The trust is to terminate at the death of her last surviving child at which time the principal is to be paid to the issue of the children of Maria L. Barroll, per stirpes. The testator provided for substitute takers should there be no such issue at the termination of the trust. The other four-fifths of the estate was distributed by way of trust or outright bequest to the four other nieces and nephews of the testator. These interests have either vested or been distributed and are not before the court.

The issue to be determined here is: Does the Rule Against Perpetuities invalidate the ultimate remainders? Stated simply, the Rule Against Perpetuities invalidates future estates which, by possibility, may not become vested within the time prescribed by law — a life or lives in being and twenty-one years. Here it was possible for Maria Barroll to have borne a child after the death of testator, whose life span obviously could affect the ultimate distribution. Thus, on its face, this trust admits of possible gifts in remainder to ineligible persons.

Faced with this problem, the testator's living intestate heirs joined together in a family agreement on June 30, 1928. This agreement was duly recorded. By its terms, the heirs rewrote the provisions of the trust to cure any perpetuities problem. As consideration, each gave up any claim he or she might have as intestate heirs should the original trust be found to violate the rule.

At the death of testator, Maria L. Barroll had five children: Ethel B. Ducey, F. Lewis Barroll, William Barroll, Anna B. Wright, and J. Leeds Barroll,

Jr. All of these children survived both the testator and their mother. Mrs. Barroll never bore any other children. . . .

This accounting is of the fund awarded to the trustee by adjudication of Saylor, J. dated April 18, 1968.

The accounting is filed by virtue of the death of Anna Lewis Wright, a life tenant and the last surviving child of Maria Barroll, on May 4, 1975. By the terms of the codicil, the trust is to terminate at her death.

It is stated that notice of the audit has been given to all parties in interest.

Counsel for all parties in interest and the guardian and trustee ad litem entered into a stipulation of facts for consideration by the court in determining the distribution of the principal. Said stipulation is annexed hereto and made part of the record.

The accountant has raised the question of whether the trust established by the testator's will violates the Rule Against Perpetuities as interpreted by Pennsylvania case law. The accountant takes the position that there is no violation of the Rule. However, if the court should find that the Rule has been violated, then the accountant takes the position that the family agreement is legally binding and that the effect of it is to cure the violation.

Because there was a need to protect the interest of minor beneficiaries and those beneficiaries who were unascertained who might have an interest should the trust be found to violate the Rule, by decree dated January 29, 1976, Neil E. Jokelson, Esquire, was appointed guardian and trustee ad litem to represent those interests.

The guardian-trustee ad litem takes the position

that the original trust violated the common law Rule Against Perpetuities and that, therefore, the remainder reverts back to the Estate of Lawrence Lewis to pass to his intestate heirs. He also takes the position that the family agreement is not valid.

Pennsylvania has adopted legislation to avoid the harsh results of the common law rule. The Estates Act of April 24, 1947, P. L. 100 et seq., as amended, 20 P. S. §§ 6101-6117, changed the rule from a possibilities to an actualities test. However, the statute does not apply to instruments executed before 1948, such as the present will.

Judicial interpretations of the common law rule have also softened the harsh results of the rule and are applicable to pre-1948 trusts. Pennsylvania case law has established guidelines for determining whether or not a violation of the rule due to the possibility of taking by an afterborn should result in the invalidity of gifts which met the test of eligibility.

In Quigley's Estate, 329 Pa. 281, 198 Atl.85 (1938), the court adopted the doctrine of horizontal separability by holding that a life estate which vests within the period allowed by the rule will be considered valid regardless of the validity of remainders so long as the testator's organic plan is not adversely affected.

In a similar vein, the court announced the doctrine of vertical separability in Harrah Estate, 364 Pa. 451, 72 A.2d 587 (1950). Under that doctrine, a gift in remainder to the heirs of the hypothetical afterborn child could be separated from the remainders of the heirs of those who were living at the testator's death, where the testator's organic plan is not upset. See also Morton Estate, 454 Pa. 385, 312 A.2d 26 (1973). It is this doctrine upon

which the accountant and the remaindermen of this trust base their argument that the remainders are valid.

In Harrah, the testator left a trust with income to his son, for life, then to the testator's grandchildren for life with remainder to the heirs of his grandchildren. All of the testator's grandchildren were living at his death. The court separated the interests which vested within the period of the rule from the interest of a hypothetically afterborn grandchild. This was found to be in keeping with the testator's general plan and the remainders were upheld.

The instant case appears to be identical to the facts in Harrah. Here, the testator established trusts for each branch of his family. The trust at issue provided for income to a niece, for life, then income to her children, with remainder to the issue of the children. All of the children of Maria L. Barroll were living at the death of testator. Therefore, unless the testator's organic plan would be upset by holding these interests valid by separating them from the interests of a hypothetically afterborn child of Maria L. Barroll, the remainders should be held valid.

The guardian and trustee ad litem points out that the testator treated the family line of Maria Barroll somewhat differently in his estate plan than he did other family lines. He then argues that it was testator's plan to defer vesting of principal in this line as long as possible, and, thus, testator drew no distinction between lives in being and those born thereafter. He then concludes that the requested distribution would, in essence, be violative of the organic plan of the testator.

We cannot agree. The testator demonstrated a

desire to provide for all of the branches of his family even though the manner in which each branch was treated was not the same.Only the trust established for Maria Barroll and her descendants is at issue here and the testator's organic plan with regard to this trust is the subject of our review. It is without question that testator intended to benefit the children of Maria Barroll (all five of whom were known to him) and their issue. Since there were no afterborn children whose issue would receive nothing while the issue of the others benefitted from the trust, there is no reason to conclude that his plan would be frustrated if the doctrine of vertical separability is applied.

In Morton Estate, supra, the court did not apply the doctrine of vertical separability where there were afterborn grandchildren and where, by applying the doctrine, only three of eleven possible remaindermen would take. There, the court reasoned, the testator's intent was to benefit the issue of his grandchildren and, if the doctrine were applied, only a small number of these issue would benefit while others would be excluded. This would, obviously, upset the testator's plan. The court, therefore, wisely held all remainders invalid.

This is not so in the case at bar. No grandchildren of Maria Barroll will be omitted while others reap the benefit of the testator's bounty.

The doctrine of vertical separability as set forth in Harrah and Morton is clearly applicable here. There will be no adverse affect on the testator's organic plan. The remainders to the issue of those children of Maria Barroll living at testator's death should be separated from the remainder interests of the issue of a hypothetical afterborn child of the

said Maria Barroll. The remainders so separated are valid.

The accountant and the lineal descendants of Maria L. Barroll also assert that even if the remainders are invalid because of the Rule Against Perpetuities, the family agreement signed by the intestate heirs of Lawrence Lewis is valid, and, therefore, the issue of Maria Barroll are entitled to the remainder.

Where the remainder of a pre-1947 estate is in violation of the Rule Against Perpetuities, an intestacy results and the share passes to the testator's intestate heirs determined at his date of death: Feeney's Estate, 293 Pa. 273, 142 Atl. 284 (1928); Morton Estate, supra; Pruner Estate, 400 Pa. 629, 162 A.2d 626 (1960).

At his death, the intestate heirs of Lawrence Lewis were five nieces and nephews, Maria L. Barroll, Francis A. Lewis, Anna Lewis Thurston, William R. Lewis and Anna S. Lewis; and the issue of Lawrence Lewis, Jr., a deceased nephew, Louise Lewis, Robert M. Lewis and Shippen Lewis.

On September 30, 1915, Anna Lewis Thurston released all of her interest in this estate for $25,000. On May 12, 1928, William R. Lewis and his wife conveyed his interest in the estate to F. Lewis Barroll for $5,000.

On September 30, 1928, the intestate heirs of Lawrence Lewis entered into an agreement to ensure that the issue of Maria L. Barroll received the share left to them by the testator in the event that the remainders violated the Rule Against Perpetuities. That agreement was recorded in Philadelphia County Deed Book J.M.H. 2874, p. 99 and is annexed hereto.

Counsel for the accountant has advised the court with regard to the recording procedures in City Hall in 1928. At that time, the agreement was taken to City Hall and a clerk typed the agreement into the deed book. In the 1950's, the deed books were photocopied and the deed books placed in storage. Later the photocopies were put on microfilm. It is from this film that the certified copy of the deed was photocopied.

While there is no dispute over the contents of the deed, the guardian has raised an objection to its introduction because the signatures on the deed cannot be completely ascertained. However, it appears from the microfilm copy that the clerk who typed in the deed book, Joseph Williamson, typed in the names of those who signed the deed. His work was compared with the orginal deed by another clerk whose signature appears on the photocopy. Therefore, it would appear that those whose names appear in type on the photocopy did actually sign the original deed. The original deed cannot be found.

Those who signed the deed represented all the intestate interests of Lawrence Lewis at the date of his death as shown on the family tree:

1. John Leeds Barroll, individually and as executor of the estate of Maria L. Barroll,
2. Francis A. Lewis, III (and Louise B., his wife), Blanche M. Lewis and Anna Lewis Beale, heirs and parties in interest under the will of Francis A. Lewis
3. F. Lewis Barroll (and Ethel A., his wife) assignee of William R. Lewis
4. Anna S. Lewis, and
5. a) Louise Lewis

b) Robert M. Lewis (and Helen F., his wife), and

c) Shippen Lewis.

Family agreements in regard to the settlement of estates are favorites of the law and where there appears to be mutuality of covenants, they will be upheld unless there is an allegation of fraud or unless the contract is violative of a law or rule of public policy: Walworth v. Abel, 52 Pa. 370 (1866); Ford Estate, 185 Pa. 420, 39 Atl. 106 (1898); Fry v. Stetson, 370 Pa. 132, 85 A.2d 81 (1952); Strawbridge's Estate, 322 Pa. 406, 185 Atl. 726 (1936); Wilen Appeal, 105 Pa. 121 (1884). No allegation of fraud has been made in this case. Nor is a contract to cure a possible violation of the Rule Against Perpetuities violative of law or public policy. In fact, the court has upheld such family agreements in the past and we do so here: Wanamaker's Estate, 335 Pa. 241, 6 A.2d 852 (1939); Disston Estate, 349 Pa. 129, 36 A.2d 457 (1944).

All of the intestate heirs, or their assigns, of the testator joined in the family agreement. They effectively relinquished all of their claims to the testator's estate by virtue of the agreement. Prior to the agreement, the share of each intestate heir would pass through his estate either by will or intestacy. But just as his will would have bound the ultimate distribution of an heir's share, so does the assignment of a share by way of family agreement. So, where the heirs have effectively assigned their claim against the testator's intestate estate, those who claim through those heirs are barred from asserting a claim despite the fact that they were not a party to the agreement: Estate of McGee, 378 Pa. 607, 108 A.2d 214 (1954).

Therefore, even if the trust had been found to be in violation of the Rule Against Perpetuities, the distribution of the corpus would be made in accordance with the valid family agreement. Distribution under that agreement is identical to distribution under the terms of the trust.

\*    \*    \*

And now, December 30, 1976, the account is confirmed nisi.