## Gibb Estate

*Drinker, Biddle & Reath,* for accountants.

*Charles P. Zerbe* and *Thomas L. Shannon, Jr.,* for Helen L. Gibb, legatee.

TAXIS, P. J., April 2, 1959.—Walton Gibb died September 5, 1951. In his will he gave the residue of his

estate to his wife and son and the survivor thereof in trust to pay the wife income for support and maintenance and to hold the balance not so required to accumulate for the wife's later years; when a sufficient amount had been accumulated for that purpose, payments of income were authorized to be made to the son, Walton Gibb, Jr. Upon the wife's death principal and all accumulations were to be conveyed to the son ". . . absolutely, provided that he shall not then be married or shall have no children. But in the event he shall then be married or shall have children, then the Trustees shall continue to hold the principal of my residuary Estate in trust to pay the income as above set forth each year to my said son, Walton Gibb, Jr.; and upon his death to pay, transfer and set over the principal of my residuary estate to and among the surviving wife of my said son and the surviving children of my said son in such manner and portions as though they were taking from him under the intestate laws of the Commonwealth of Pennsylvania . . ."

Testator's wife, by election dated August 28, 1952, elected to take under the intestate laws and against the will whereby she became entitled to one half of the estate absolutely. Walton Gibb, Jr., was not married when his father died nor when his mother elected to take against the will on August 28, 1952. He subsequently married on March 4, 1955.

The question for adjudication is whether the widow's election to take against the will has the effect of accelerating Walton Gibb, Jr.'s remainder so that he takes a fee simple interest in the residue, or whether he takes merely a life estate in the income thereof. I conclude that Walton Gibb, Jr., takes the residue outright caused by the acceleration of his remainder interests by his mother's election against the will. Let me briefly demonstrate why this is a proper result.

The general rule is that a widow's election to take against the will is tantamount to her death and remainder interests are thereby accelerated even though they may be contingent: Disston's Estate, 257 Pa. 537; Schmick Estate, 349 Pa. 65.

As said in Disston's Estate, page 543, ". . . a testator is presumed to know also the general rule that the election of a widow to take under the intestate laws is equivalent to her death, and that, unless his will plainly indicates a contrary intent, remainders are accelerated accordingly. Of course, an intent that there shall be no acceleration may be shown by inevitable implication . . ."

In Disston's Estate, supra, the widow, son and daughter were each given one-third income interests in a fund for life with cross remainders of income in favor of the survivors if a child predeceased the widow leaving no issue, and with the remainder in fee to the children at the widow's death. If at the widow's death one of the children had predeceased her leaving issue such issue were to take the principal of the share of such child, but if he or she left no issue the survivor was to take all. It was held that the widow's election immediately vested the fee in the children. The court remarked, at page 542:

"It is apparent from a reading of the will that the testator's paramount intention was to create a trust during the life of his widow, so that she might enjoy the income from, not one-third of his estate, but one-third of the income from his whole estate, and that, after thus providing for his wife, the primary object he had in view was to benefit his children . . . this being the evident scheme of the will and the plan having been interfered with by the widow's election to take her share under the intestate laws, the acceleration of the remainder interests given to testator's

children would carry out his principal intent, and also adhere to his general plan better than continuing the trust so that the secondary objects of his bounty might be afforded an opportunity to derive a possible benefit in the future."

An examination of Mr. Gibb's will will indicate that its dispositive provisions fail to come within the situatons in which courts usually imply an intent not to accelerate. Moreover, failure to accelerate in the instant case will result in benefiting a more remote taker at the expense of the more immediate, namely, an unascertained wife and unborn child at the expense of the testator's son. Coupled with this, of course, is the fact that the beneficiary of acceleration, the son, is the natural object of testator's bounty, which the courts have indicated is the principal reason justifying the acceleration of remainders.

It is equally clear that Mr. Gibb has failed to provide expressly for the distribution to be made in case his wife should elect against the will, and he has not provided for distribution independent of his wife's death. Nor has he expressed an independent reason for postponing the vesting of the son's fee. No such inference can be drawn from his attempt to provide for the son's wife and children to be. To so infer would require a new exception to the rule as expressed in Disston's Estate, supra. The fact that Walton Gibb, Jr., has married subsequent to his mother's election, but prior to final distribution, is irrelevant, as the facts appearing at the time of election only are determinative. See Wyllner's Estate, 65 Pa. Superior Ct. 396, in which the remainderman whose interest was contingent on survival of the spouse was accelerated into a fee even though he had died between the dates of election and distribution. For the foregoing reasons I conclude that the widow's election against the will

accelerates the remainders and Walton Gibb, Jr., is herewith awarded the residuary estate absolutely. . . .

And now, April 2, 1959, this adjudication is con-firmed nisi.