**Ruth M. BACH, Melvin C. Webb, and the First Pennsylvania Banking and Trust Company, Executors of the Estate of Charles T. Bach, Deceased, Appellants,**

**v.**

**Edgar A. McGINNES, individually and as District Director of Internal Revenue for the Internal Revenue District of Philadelphia, Pennsylvania.**

No. 14580.

United States Court of Appeals Third Circuit.

Argued Feb. 20, 1964.

Decided June 30, 1964.

James J. Cloran, Philadelphia, Pa. (Charles J. Biddle, Drinker Biddle & Reath, Philadelphia, Pa., on the brief), for appellants.

Edward L. Rogers, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., Drew J. T. O'Keefe,

## 980

U. S. Atty., of counsel, on the brief), for appellee.

Before KALODNER and HASTIE, Circuit Judges, and KIRKPATRICK, District Judge.

KALODNER, Circuit Judge.

This is an appeal from the Order of the District Court dismissing the plaintiffs' action for recovery of federal estate taxes paid following disallowance of a claimed charitable deduction under Section 2055(a) of the Internal Revenue Code of 1954.[1]

Critical to our disposition are these undisputed facts:

Charles T. Bach, a resident of Pennsylvania died testate on May 3, 1955. After providing for certain legacies and bequests, he devised and bequeathed the residue of his estate, in trust, the income to be payable to his wife Ruth for life; upon her death the principal of the trust was to be divided into three equal parts and distributed as follows: one-third to his niece, Helen Gledhill, if then living; one third to his nephew, Elwood S. Kille, if then living, otherwise to his wife, if then living; one-third to another nephew, Charles T. Weidner, if then living, otherwise to his wife, if then living; in the event that any of the named legatees predeceased Mrs. Bach then his or her share was payable to the surviving legatees, and if none of them survived Mrs. Bach the principal of the trust was to be distributed to the Drexel Institute of Technology ("Drexel") a corporation organized and operated exclusively for literary, scientific and educational purposes, within the meaning of Section 2055(a) of the 1954 Code.

At the time of her husband's death Mrs. Bach was 52 years old; the five legatees ranged in age from 59 to 67 years[2] and all were in good health and there was an actuarial possibility of 60 per cent that Mrs. Bach would not survive all of them.

Under Pennsylvania law Mrs. Bach had the right to take against her husband's will and thereupon receive one-half of his estate outright since there were no children. She was so advised by Charles J. Biddle, an attorney, whom she consulted at the suggestion of a fellow co-executor, Melvin C. Webb, who was at the time secretary of Drexel's Board of Trustees. Mr. Biddle was Drexel's counsel and a member of its Board of Trustees.

Mrs. Bach informed Mr. Biddle she was "perturbed" by reason of the fact that should she pre-decease the five individual legatees Drexel would not receive anything under her husband's will. Mr. Biddle advised Mrs. Bach she could take against the will and thereby receive one-half of the estate outright and that an arrangement could possibly be made with the legatees to accept a lump sum settlement for their interest in the remaining half of the estate with the bal-ance to be paid to Drexel; "he wasn't sure what would happen to the other half so far as the Drexel Institute was concerned" if such arrangement could not be made; he "didn't know what the result of that [taking against the will] would be, whether or not the effect of that under the Pennsylvania law would be just as if she died, so that the others, these legatees, would move in and divide between them the whole balance of the estate, or whether they would have to wait before they got anything to see whether or not they survived Mrs. Bach.

Subsequently at a meeting on August 3, 1955 (three months after Mr. Bach's death), Miss Gledhill and Mr. and Mrs. Kille met with Mrs. Bach, Mr. Webb and Mr. Biddle, at the latter's invitation.

---

1. 26 U.S.C.A. § 2055(a) (2). (a) provides in relevant part for the deduction "from the value of the gross estate the amount of all bequests, legacies, devises, or tranfers * * * (2) to or for the use of any corporation organized and operated exclusively for * * * charitable, * * * or educational purposes * * *."

2. Mr. Kille was 67 years old and his wife 59; Miss Gledhill was 65; Mr. Weidner was 62 and his wife 61.

Mr. Biddle told them that Mrs. Bach was considering taking against the will and that should she do so "it would raise a serious question as to the disposition of the other one-half of the estate; the Court might rule that such an election had the same effect as the death of Mrs. Bach, in which event the other one-half of the estate would be distributed outright to the individual residuary beneficiaries; on the other hand, the Court might hold that it was the decedent's intention that the individual residuary beneficiaries had to actually survive Mrs. Bach before receiving any part of the estate, in which event the other one-half of the estate would be held in escrow until the death of Mrs. Bach and while so held no individual beneficiary would receive any part of the estate; * * * if the one-half of the estate were so held in escrow, in the normal course of events the individual beneficiaries would receive nothing since all of them were much older than Mrs. Bach; * * * that in his opinion this question concerning the distribution of half of the decedent's estate in the event Mrs. Bach elected to take against the will should be settled by agreement among the beneficiaries and thus avoid litigation; he suggested to them for their consideration that each individual legatee receive the sum of $25,000 and that the balance of the estate be paid to Drexel Institute."

It should be stated, parenthetically, that the foregoing quoted account of what was said by Mr. Biddle is taken from his brief in behalf of the estate on this appeal.

Miss Gledhill agreed to accept $30,000 in lieu of her interest in the estate should Mrs. Bach elect to take against the will and so did Mr. and Mrs. Kille.

On August 9, 1955, Mr. Biddle wrote to the Weidners, then resident in Texas, that Miss Gledhill and Mr. and Mrs. Kille had agreed to accept $25,000 "as an outright payment", and asked them if they would do likewise. He said in his letter, that should Mrs. Bach not take against the will it was unlikely, "in the natural course of events" that any of the legatees would survive her, and, "if some should, they will probably be too old at the time of her death to derive a great deal of pleasure from their legacies"; and "under these circumstances, it seemed to Mrs. Bach that it would be better if an arrangement could be made so that all the residuary legatees could get something now for certain and when they were still young enough to get the maximum benefit from it." While Mr. Biddle, in his letter, stated that "certain problems have arisen in Mr. Bach's estate", and that should Mrs. Bach take against the will she would receive half of the estate, he made no mention of what would or could happen with respect to the remaining half.

On August 23, 1955 the Weidners wrote to Mr. Biddle accepting $25,000 as an "outright payment". On September 19, 1955 they, together with the other individual legatees and Drexel signed a "Settlement Agreement" which provided for a $30,000 payment to Miss Gledhill and a like payment to Mr. and Mrs. Kille and Mr. and Mrs. Weidner, and distribution of the balance of the estate to Drexel, in the event that Mrs. Bach elected to take against the will.

A month later, Mrs. Bach elected to take against the will and to receive one-half of the estate under Pennsylvania law.

On May 23, 1956, the Orphans Court of Delaware County, Pennsylvania approved the settlement agreement and gave effect to it in its adjudication. Drexel received $186,199. The Commissioner of Internal Revenue subsequently disallowed a charitable deduction claimed on the distribution to Drexel; the estate paid a deficiency assessment; the Commissioner denied a claim for refund; the District Court dismissed the estate's suit for recovery of the additional tax paid, and this appeal followed.

In their claim for refund, and in the District Court, the estate contended that the property received by Drexel under the agreement passed to it as an inheritance, entitling the estate to a chari-

table deduction under Section 2055(a) (2) of the Internal Revenue Code of 1954 which provides for the deduction of "the amount of all bequests, legacies, devises, or transfers" to charitable organizations such as Drexel.

The District Court [3] rejected the estate's contention on these two grounds: first, that the bequest to Drexel did not meet the requirements of the Treasury Regulations on Estate Tax (1954 Code),[4] applicable to contingent charitable bequests, since the possibility, at the date of Mr. Bach's death, that the bequest to Drexel would not become effective was not "so remote as to be negligible", inasmuch as there was a 60 per cent possibility that at least one of the named individual legatees would survive Mrs. Bach and thus deprive Drexel from sharing in the estate; and second, under Pennsylvania law, a widow's election to take against her husband's will is equivalent to her death, so that Mrs. Bach's election to take against the will "accelerated the remainder interest of the named relatives and deprived Drexel Institute of its contingent legacy," and, accordingly, "[w]hat Drexel Institute actually received under the settlement agreement it received from the named relatives and not from the testator." 218 F.Supp. 915, 916.

On this appeal the estate contends that "the District Court failed completely to recognize the relevant issues for determination in this case, namely (1) "Was there a real dispute concerning the distribution of the balance of the decedent's estate in the event the decedent's widow elected to take against the Will?; and, (2) Did the interest given Drexel Institute under the Will give it the right to contest any action depriving it of such interest?"

The estate urges that "it is clear" that "the filing of the widow's election to take against the Will would have caused a genuine dispute" and that "Drexel's interest, as set forth in the Will, clearly gave it the right to participate in the settlement of the genuine dispute." It further argues that "the provisions of the Will as modified by the compromise settlement" constituted the property received by Drexel as "an inheritance from the decedent" deductible under Section 2055(a) (2) and cites in support Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938); Dumont's Estate v. Commissioner, 150 F.2d 691 (3 Cir. 1945), and Estate of Gilbert v. Commissioner, 4 T.C. 1006 (1945).

It must immediately be noted that the estate side-steps the District Court's first ground for dismissing its action—to wit —that the bequest to Drexel, under the will itself, did not meet the requirements of the Treasury Regulations on Estate Tax, inasmuch, as of the date of Mr. Bach's death the possibility that the Drexel bequest would not become effective was not "so remote as to be negligible"; and merely contends that (1) "A determination based solely on the provision of the Will is clearly erroneous", and (2) the critical factor in this case is the circumstance that Drexel received its distribution under "the provisions of the Will as modified by the compromise settlement" of "a genuine dispute."

We are of the opinion that the position taken by the estate in this respect is utterly without merit.

■ It is settled law that Treasury Regulations on Estate Tax are valid.[5]

---

3. The District Court's opinion is reported at 218 F.Supp. 914 (E.D.Pa. 1963).

4. "Sec. 20.2055–2 Transfers not exclusively for charitable purposes

    \*    \*    \*    \*    \*

"(b) *Transfers subject to a condition or a power.*

"If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. \* \* \*"
26 C.F.R. Sec. 20.2055–2.

5. Commissioner v. Sternberger's Estate, 348 U.S. 187, 199, 75 S.Ct. 229, 99 L.Ed. 246 (1955).

■ The stipulated fact [6] that "on the date of the decedent's death, there was an actuarial possibility of 59.925 per cent" that Mrs. Bach would not survive the five named legatees conclusively establishes that the Drexel bequest was not eligible for a charitable deduction under the Treasury Regulations "as of the date" of Mr. Bach's death, and nothing which happened thereafter, viz., the compromise settlement, could breathe life into a still-born non-existent eligibility. As the District Court so aptly put it "A 60 per cent possibility obviously is not a negligible one." 218 F.Supp. 915.

Mr. Bach's failure to make a bequest to Drexel qualifying for a charitable deduction, as of the date of his death, makes totally irrelevant the contention that Drexel received as an "inheritance" the distribution which was made to it under the compromise settlement.

It may be observed, parenthetically, that the estate's reliance on Lyeth v. Hoey, supra, Dumont's Estate v. Commissioner, supra, and Estate of Gilbert v. Commissioner, supra, is wholly misplaced. These cases are inapposite with respect to the critical issue here, viz., the impact of the applicable Treasury Regulations on the allowability of deductions of contingent charitable bequests. None of these cases concerned contingent charitable bequests. In Lyeth and Dumont the heirs and legatees challenged the testamentary capacity of the decedent; in Gilbert there was a dispute as to the sweep of the term "hospitals" as used in the will. Other cases cited by the estate are wholly inapposite, and it would serve no useful purpose to advert to them.

For the reasons stated, we are of the opinion that the District Court properly dismissed the estate's action on its first ground—the bequest of Drexel did not satisfy the requirement of the Treasury Regulations that as of the date of Mr. Bach's death, the possibility that it would not take under the will, was not "so remote as to be negligible."

■■ We further agree with the District Court's second ground for dismissing the estate's action, viz., that Mrs. Bach's election to take against the will "accelerated the remainder interest of the named relatives and deprived Drexel Institute of its contingent legacy", and accordingly, "[w]hat Drexel Institute actually received under the settlement agreement it received from the named relatives and not from the testator."

Under the Pennsylvania Wills Act of 1947 [7] a widow has the right to elect to take against her husband's will and such election entitles her to receive outright one-half of his estate where, as here, there are no children. "The general rule is that the election of a widow to take under the intestate laws is equivalent to her death, and *unless the will plainly indicates a contrary intent, remainders are accelerated.*" Schmick Estate, 349 Pa. 65, 68, 36 A.2d 305, 307 (1944). "Testators are presumed to know [this] general rule," France Estate, 352 Pa. 522, 525, 43 A.2d 139, 141 (1949); further, "* * * every married testator knows, or is presumed to know, that his surviving spouse may elect to take against the will", and "may always condition his legacies depending upon the election of the widow." Schmick Estate, supra, 349 Pa. at page 70, 36 A.2d at page 308 (emphasis supplied).

In the instant case when Mrs. Bach elected to take against the will her action was equivalent to her death" and, under the terms of the will, the one-half of the estate which remained was vested in Miss Gledhill, Mr. Kille and Mr. Weidner, and that wrote "finis" to the contingent Drexel bequest.

6. Paragraph 20, Stipulations of Facts reads as follows:
"On the date of the decedent's death, there was an actuarial possibility of 59.-925 per cent that Ruth M. Bach would not survive all of the following persons: Helen K. Gledhill, Charles T. Weidner, Hazel Adams Weidner, Elwood S. Kille, and Johanna Kille."

7. 20 P.S. § 180.8.

984

We agree with the District Court's holding that "The provisions of the will in the present case indicate that the testator intended to provide for his wife first and after her, his named relatives and that only after these favored legatees had been provided for was Drexel Institute to receive anything." 218 F. Supp. 916. Under no circumstance could it be reasonably contended that the will "plainly indicates a contrary intent."

As the District Court so well said: "The will, as modified by the widow's election, gave Drexel Institute nothing. What Drexel Institute actually received under the settlement agreement it received from the named relatives and not from the testator. * * * Hence there can be no charitable deduction." 218 F.Supp. 916. Estate of Carey v. Commissioner, 9 T.C. 1047, 1053 (1947), aff'd per cur., sub nom. Marine National Bank of Erie v. Commissioner, 168 F.2d 400 (3 Cir.) and Robbins v. Commissioner, 111 F.2d 828 (1 Cir. 1940) are in full accord.

For the reasons stated the Order of the District Court dismissing the complaint will be affirmed.