J. M. UNDERWOOD and Harry B. Brown, Executors of the Estate of Robert Boone Scott, Deceased, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 18505.

United States Court of Appeals Sixth Circuit.

March 4, 1969.

W. L. Ambrose, Jr., Knoxville, Tenn. (W. L. Ambrose, Jr., John A. Thomas, Knoxville, Tenn., on the brief), for appellants; Ambrose, Wilson, Thomas & Lockridge, Knoxville, Tenn., of counsel.

Elmer J. Kelsey, Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Jeanine Jacobs, Attys., Dept. of Justice, Washington, D. C., John H. Reddy, U. S. Atty., Robert E. Simpson, Asst. U. S. Atty., Knoxville, Tenn., on the brief), for appellee.

Before COMBS, Circuit Judge, McALLISTER, Senior Circuit Judge, and KENT, District Judge.*

COMBS, Circuit Judge.

Plaintiffs-appellants, executors of the estate of Dr. Robert Boone Scott, filed this suit, seeking refund of federal estate taxes paid. The executors originally claimed that six legitimate deductions

---

* Honorable W. Wallace Kent, Chief Judge, United States District Court for the Western District of Michigan, sitting by designation.

were wrongfully disallowed by the Internal Revenue Service. Four of the deductions were eventually allowed, either through settlement or by the district court's decision. Only the claimed deductions that were disallowed are in issue on this appeal.

The testator, Dr. Scott, died in 1962. For many years, he had practiced medicine and operated a hospital in Lake City, Tennessee. He left an estate of approximately $678,000 and a holographic will he had written in 1957. The will, although highly ambiguous and fraught with impractical and inadequate provisions, was admitted to probate. Three provisions of the document are applicable to the issues on appeal. Items (7), (8), and (9) provide as follows:

"(7) * * * When my daughter becomes 50 years old, the entire estate shall be settled and all of the funds left shall go to her provided my widowed wife is deceased, but not before.

"(8) On Oct. 14, 1997, if my daughter is deceased, and my wife, who is my widow is deceased, then the remainder of my entire estate shall go to the Dr. Boone Scott Memorial Fund of the Univ. of Tenn. Medical School.

"(9) To execute this will I will appoint J. M. Underwood, Atty., Clinton, Tenn. H. B. Brown (Britain) Atty, Jellico, Tenn. and First National Bank, Lake City Tennessee. Fees for same shall not exceed 5% as funds are dispersed."

Dr. Scott's wife predeceased him and he was survived by his only child, a fifteen-year-old daughter, Gwendolyn. The date referred to in Item (8), October 14, 1997, would be Gwendolyn Scott's fiftieth birthday. At that time, the entire residue or remainder of the estate, consisting of trust funds established in previous items of the will, would go to the daughter if she was then alive, otherwise to the University of Tennessee.

The university, preferring not to wait thirty-odd years for a possible right to the remainder, agreed with the executors on the sum of $50,000 in settlement of its claim under the will. This settlement was approved by the probate court and the guardian ad litem of Gwendolyn Scott.

The executors contend that the $50,000 paid to the university should be allowed as a charitable deduction.

The other assignment of error concerns the amount of executors' fees which may be properly deducted. Of the three executors named under Item (9) of the will, the First National Bank of Lake City declined to serve, and Messrs. Underwood and Brown agreed to qualify only on condition that they would not be bound by the five percent limitation contained in the will. This condition was accepted by the probate court which found that the executors were entitled to "reasonable, proper, and adequate compensation."

The executors were ultimately allowed a fee of $54,282.07, which amounted to eight percent of the gross estate. To the extent the fees exceeded the five percent limitation imposed by the testator, they were disallowed by the Internal Revenue Service and the district court.

With respect to the claimed charitable deduction, we find that the overwhelming weight of authority supports the district court's determination of nondeductibility. Section 2055 of the Internal Revenue Code permits, in general, deduction from the gross estate of "the amount of all bequests, legacies, devises, or transfers" to charitable purposes or organizations, which would include the University of Tennessee. Appellants argue that the $50,000 was "transferred" to the University, and thus should be deductible. But this interpretation of the section is foreclosed by the language of Treasury Regulation 20.2055–2(b) and by the cases which have applied and approved that language. Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955); Bach v. McGinnes, 333 F. 2d 979 (3rd Cir. 1964); City Nat'l Bank and Trust Co. of Columbus v. United States, 312 F.2d 118 (6th Cir. 1963);

United States v. Dean, 224 F.2d 26 (1st Cir. 1955). The regulation, in pertinent part, provides:

"If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible."

Thus, before a charitable deduction will be permitted, it must be said that, looking at the face of the will and the circumstances existing at the time of the testator's death, the possibilities that the charity will not take are so remote as to be negligible. Commissioner of Internal Revenue v. Sternberger's Estate, supra. Applying that test to the facts here presented, it is clear that no deduction may be permitted. The university could have received the remainder of Dr. Scott's estate through operation of the will only in the event the daughter died before October 14, 1997. It is conceded that, based on mortality tables, the statistical probabilities were nine-to-one that Miss Scott would be alive on that date. Certainly, the possibility that the university would receive nothing was more than negligible. See United States v. Dean, supra.

The fact that a settlement was effected and the university actually received $50,000 is not pertinent to our inquiry. The rule, while harsh in its application here, is too well-established for question now. The purpose of allowing charitable deductions is to encourage testators to make charitable bequests, not to permit executors and beneficiaries to rewrite a will so as to achieve tax savings. Y. M. C. A. v. Davis, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558 (1924).

Turning to the claimed deduction for executors' fees, we are of the opinion the district court erred in failing to allow deduction of the amount actually paid.

The Supreme Court of Tennessee has not spoken on this question. The district court relied on Hoffman v. Jones, 7 Tenn.Civ.App. 392 (1918). That case, while generally supporting the district court's decision, was rendered by an intermediate appellate court on a slightly different factual situation. The executors in Hoffman accepted their appointment without condition, then later sought an increase in their compensation beyond the limits set out in the will. There was no such unconditional acceptance here.

Dr. Scott's will, on its face, was not susceptible of reasonable interpretation. If his directions had been literally followed, much of the estate would have been dissipated and litigation would have most certainly continued for many years. There is no suggestion that the executors' fees allowed by the probate court were excessive. A review of the record convinces us they were entirely reasonable. It is unlikely that, given the problems Dr. Scott's will presented, any qualified executor would have agreed to serve for only five percent commission.

The United States Supreme Court held in Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), that, in the absence of a decision by the supreme court of the state, federal authorities, in passing on questions of state property rights in a federal tax case, should apply what they find to be the state law after giving proper regard to relevant rulings of the courts of the state.

Generally speaking, an executor may renounce the provisions of a will and claim the statutory compensation. 31 Am.Jur.2d Executors and Administrators § 493 (1967). In effect, that is what occurred here. The executors conditioned their appointment on abrogation of the testator's compensation limitation. This condition was accepted by

the probate court, which then fixed the compensation in accord with the statutory standard of reasonableness. See Leach v. Cowan, 125 Tenn. 182, 140 S.W. 1070 (1911). We believe that the Supreme Court of Tennessee, given these facts, would have affirmed the action of the probate court in allowing the executors' fees. It follows that the fees actually paid by approval of the probate court should have been allowed as a deduction for tax purposes.

We observe in conclusion that this is a fair solution to the problem and does no violence either to the statutes or to the testator's expressed intention. His overall intention was that his estate be properly administered and preserved for his beneficiaries. The action of the probate court made that result possible. In the absence of a statutory mandate, the Government should not be permitted to second-guess the probate court.

The judgment is affirmed in part and reversed in part, and the case is remanded for proceedings consistent with this opinion.