# James's Estate.

*Wills—Trusts—Rule against perpetuities—Construction — Intention.*

1. Where the language of a will leaves a doubt whether the rule against perpetuities has been transgressed, the doubt may well be resolved in favor of the vesting of the remainders within the required time, especially when, upon a careful examination of the whole will such may reasonably be inferred to have been the intention of the testator.

2. A testatrix, having two daughters and three granddaughters, children of a deceased child, devised her residuary estate "in trust ......during all the period of my grandchildren's lives and the life of the survivor of them" the net income to be paid "to all my grandchildren in equal parts," should any grandchild die leaving issue, such issue to take the parent's share. "After the death of the last survivor of my grandchildren......for......my great-

grandchildren until each arrives at the age of twenty-one years ......." By codicil testatrix directed that the net income be divided into five equal parts, and that one-fifth be paid to each of her two daughters for life, and the remaining three-fifths to the three daughters of her deceased daughter C., and to the survivors and survivor of them for life, and declared: "Desiring to do equal justice to all my children has induced me to make this alteration in my will." Subsequently, testatrix by codicil, directed her trustee to pay one-fifth of the income to each of her daughters, naming them, and one-fifth to each of her granddaughters, naming them, "and the survivor of them during all of their and her natural life, then to my great-grandchildren as provided in the foregoing will." "On the death of either of my aforesaid daughters or granddaughters without leaving issue, her or their share to be equally divided among the survivors, should either of the aforesaid daughters or granddaughters leave issue, such issue to take the parent's share, share and share alike." By a final codicil, testatrix provided that "should neither of my daughters or granddaughters leave surviving her a child or children to survive to twenty-one years of age to inherit and possess the principal of my estate after the death of my last child and grandchild—in that event I give, devise and bequeath the whole of my residuary and revisionary estate to......(charities)." One of testatrix's granddaughters contended that the trust was invalid, as violating the rule against perpetuities. *Held*, the Orphans' Court did not err in decreeing that the language of the will and codicils disclosed testatrix's intention to provide life interests for the grandchildren named by her and not for others who might subsequently be born, and that the rule against perpetuities had not been infringed.

Argued March 17, 1914. Appeal, No. 287, Jan. T., 1913, by Anne N. Cooper, from decree of O. C. Philadelphia Co., Jan. T., 1891, No. 449, dismissing exceptions to adjudication in Estate of Amanda James, Deceased. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication. Before GUMMEY, J.

The opinion of the Supreme Court states the facts.

The exceptant contended that a trust created by the will of Amanda James, deceased, was invalid, as being in violation of the rule against perpetuities.

The court dismissed the exceptions in an opinion filed by DALLETT, P. J.   Anne N. Cooper appealed.

*Error assigned* was in dismissing the exceptions.

*E. Spencer Miller,* for appellant, cited Coggins' App., 124 Pa. 10.

*Eli Kirk Price,* for appellee, cited Shalters v. Ladd, 163 Pa. 509; Wentzel's Est., 12 Pa. D. R. 63.

OPINION BY MR. JUSTICE MOSCHZISKER, April 20, 1914:

The question involved is, was error committed by the court below in holding that the testatrix's disposition of the principal of her residuary estate did not infringe the rule against perpetuities?

Amanda James died December 22, 1889, leaving to survive her two daughters, Mary A. Conover and Anna N. James, and three granddaughters, Mary A. Jacoby, Anna M. Cooper, and Henrietta Cooper, children of a deceased child; the two daughters subsequently died without issue, and this left the three grandchildren, who likewise have no issue, as her only heirs and next of kin.

Following several specific bequests to her two daughters and three granddaughters, in which they are designated by their respective names, the testatrix devises her residuary estate, "in trust......during all the period of my Grand-children's lives and the life of the survivor of them; all the net income therefrom to be paid to all my grandchildren in equal parts, should either grandchild die leaving issue, child or children, said issue to take the parent's share if one solely, if more, in equal parts the said net income to be paid to my grand-daughters and not to be subject to the control or intermeddling of any husband either of my grand-daughters may ever have. After the death of the last survivor of my Grand children......for......my great grand children until each arrives at the age of twenty-one years—when the

principal of each one's share and all income not previously paid on account of the education or maintenance of the child in minority I give devise and bequeath such share or equal part to each great grand children as he or she attains the age of twenty-one years and to his or her heirs absolutely forever." In 1872, by a codicil (No. 2), she provided "Of the Residue of my estate, I direct the net income therefrom be divided into five equal parts, One equal fifth part thereof I direct my Executor...... to pay to my daughter Mary A. Conover during all the period of her natural life...... I give......my daughter, Annie N. James......and direct my Executor ......to pay to her during all the period of her natural life one full equal fifth part...... The remaining three-fifths......I give......to the three daughters of my deceased daughter Caroline H. Cooper and to the survivors and survivor of them......to be paid to them, my grand-daughters survivors and survivor in equal parts during all their and her natural life. In all other respects, except as altered by this Codicil do I republish, confirm and fully ratify my foregoing Last Will & Testament dated June sixth 1867. Desiring to do equal justice to all my children has induced me to make this alteration in my will." In 1876, by a codicil (No. 3), she provided, "I do now direct the whole net income from all the rest, residue and remainder of my Estate......be divided in five equal parts, one equal fifth part thereof, I direct him (her executor) to pay to my daughter Mary A. Conover during all her natural life. One equal fifth part thereof, I direct him to pay to my daughter Anna N. James during her natural life, The other Three-fifths part of said Net Income, I direct the aforesaid Executor and Trustee to pay to my three Grand Daughters, Ann N. Cooper, Mary Jacoby (formerly Cooper) and Henrietta Cooper and the survivor of them during all of their and her natural life, then to my Great Grandchildren as provided in the foregoing Will, On the death of either of my aforesaid Daughters or Grand Daughters

without leaving issue, Her or their share to be equally divided among the survivors, should either of the aforesaid Daughters or Grand Daughters leave issue such issue to take the parent's share, share and share alike." In 1886, by a final codicil (No. 5) she provided, "Should neither of my daughters or grand daughters leave surviving her a child or children to survive to twenty-one years of age to inherit and possess the Principal of my Estate after the death of my last child and Grandchild —In that event I give devise and bequeath the whole of my Residuary and Reversionary Estate to...... (charities)."

In finally determining that the rule against perpetuities did not apply, the Orphans' Court in banc accepted the view expressed on a prior occasion in an opinion written by one of its members and adopted by the auditing judge in the present instance, which reads, in part, as follows: "This residuary estate was also given...... in trust for the survivor of her grand-children's lives and the life of the survivor, the net income to be paid to the grand-children, and in the event of death of either, to their issue, the income to be paid to 'my grand-daughters,' not subject to the control of any husband either might have. On the death of the survivor of the grandchildren the great grand-children were to receive the income until he or she, respectively, attains the age of twenty-one years, at which time they were to take their shares of the principal. It is apparent from a study of this residuary clause that testatrix used grand-children and grand-daughters interchangeably and this is accentuated by her speaking of her great grand-children as 'he or she,' yet her language is comprehensive enough to embrace all grand-daughters and is not necessarily limited to the children of her then deceased daughter, Catherine, though in all probability, judging from other gifts to them, they alone were in her mind. The codicil, that of May 28, 1872, materially changes the provisions of the will. Its purpose is significant: 'Desiring to do

equal justice to all my children has induced me to make this alteration in my will. The net income of my residuary estate is to be divided into five equal parts.' A division into fifths is in itself noteworthy. There were then two living children and three living grandchildren, all women, and two and three make five. One-fifth was to be paid to the daughter, Mary, for life,...... Another fifth was given to the daughter, Anna, for life, ......The remaining three-fifths......were given to the three daughters of my deceased daughter, Catharine H. Cooper, and the survivors and survivor of them and the trustee was directed to pay them, my grand-daughters survivors and survivor, the three-fifths of the income during all their and her natural life. In all other respects the will as originally written was republished. The limitation over to the great grand-children on the death of the survivor of the cestui que trusts, as defined by this codicil, was not illegal,—those who took equitable life-interests were in terms defined, they were all living at the time of the execution of the codicil and of the decease of the testatrix. The third codicil......directed......the whole net income......to be divided into five different parts; again, one is given to the daughter Mary for life, one to the daughter Anna for life, and the other three-fifths are to be paid to my three grand-daughters, Anna M. Cooper, Mary Jacoby (formerly Cooper) and Henrietta Cooper, and the survivor of them, during all their and her natural life, then to my great grand-children as provided in the foregoing will. This codicil so drawn is also the result of deliberation. Testatrix concludes having disposed of my estate as I believe right and just, I desire my dear children and grandchilren to accept the same harmoniously. Though a will speaks from the time of one's death it is impossible to infer that 'dear children' meant other than the two living daughters and grandchildren,...... The fifth and last codicil drawn ten years later, May 24, 1886, provides for a gift to five charities.......in case the equitable life

tenants die without issue who should attain the age of twenty-one years. Little more need be said. The analysis is conclusive and compelling...... The intent demonstrated by apt language is to give the three granddaughters, after the death of the two daughters, equitable life-estates and no more, and the corpus must and does vest not later than twenty-one years after a life in being at the time of the creation of the trust: Gray, sec. 201, (2d Ed.)."

Thus it may be seen, the court below held that the rule against perpetuities had not been infringed, because the will and codicils taken together (Shalters v. Ladd, 163 Pa. 509,) show the testatrix merely intended to provide life-interests for the grandchildren specifically named by her, and not for others who might subsequently be born. But the appellant contends that the disposition conflicts with the rule, in that a proper reading of the will and codicils shows a devise for life to grandchildren generally, and not exclusively to the particular grandchildren actually designated by name; in other words, that a child born after the death of the testatrix to either one of her two surviving daughters, would be entitled to a share of the income for life, and the ultimate distribution of principal would be postponed until the death of the last grandchild, including such after-born grandchildren, if any; hence, that there was a possibility of the rule being infringed, which is enough to avoid the whole disposition. The point involved is not free from difficulty; but after consideration of the able argument of counsel for the appellant and much thought upon the subject, we are not convinced of error in the view taken by the court below.

In addition to what we have excerpted from the opinion of the Orphans' Court, it is to be noted that in the second codicil, immediately after the language already quoted, the testatrix provides, "It is my desire that my house-hold goods be......equally divided between my daughters and grand-daughters absolutely"; she then

proceeds to set aside articles for each of her two daughters and three granddaughters, designating them by name. The significance of this is to show that although in this particular instance the testatrix used the general phrase "granddaughters," nevertheless, she merely had in mind the then living granddaughters, and not granddaughters generally; so the strong probabilty is that in her other references to "grandchildren," she meant only those living and known to her. To get at the intent of the testatrix, we may properly take into consideration the circumstance that the will and codicils indicate she did not think it probable her two living daughters would bear children, to add to the number of grandchildren she already had; and this may well account for the somewhat vague way in which several of the codicils deal with the possibility of such issue. The appellant urges, however, that certain parts of the third and fifth codicils prove conclusively that the testatrix contemplated this possibility; but conceding the point, and also that, under some circumstances, a mere "legal possibility of issue" may be sufficient to bring the case within the rule against perpetuities (Rhodes's Estate, 147 Pa. 227, 230), yet, when the codicils in question are carefully considered, they do not necessarily avoid the final conclusion reached by the court below. In the third codicil, after creating life-estates for her two daughters and three granddaughters, the testatrix says, "On the death of either of my aforesaid daughters or Grand-daughters without leaving issue, Her or their share to be equally divided among the survivors, should either of the aforesaid daughters or granddaughters leave issue such issue to take the parent's share, share and share alike." It would be difficult to determine from this language exactly what interest the testatrix intended possible children of her two living daughters to take, were it not for the following words in the fifth codicil, "Should neither of my daughters or grand-daughters leave surviving her a child or children to survive to twenty-one years of age

to inherit and possess the principal of my estate after the death of my last child or grand-child," then etc. This introduction to the last codicil indicates that the. testatrix intended that should the unexpected happen and either of her two living daughters have issue, meaning children, then the grandchildren so born should not only receive a portion of the income during minority but should, upon arriving at the age of twenty-one years, also take a share of the principal, the same as already provided for great grandchildren who might be born through any of the three living children of her deceased daughter; and the grandmother probably thought she had made such intention plain in the third codicil to her will.

What we have just stated, is a most likely explanation; for although the testatrix definitely declares in the fifth codicil that the principal is not to be distributed until after the death of her last "grandchild," by this she must have meant, the last of the three living grandchildren previously named by her, and not grandchildren generally, otherwise the language would be entirely inconsistent, in that she would be in the position of indicating that future grandchildren born to her two living daughters should take principal upon arriving at twenty-one years of age and at the same time providing they should only take after the death of the last of her grandchildren, which would present an impossibility. Hence, if the language denoting the testatrix's contemplation of the possibility of children to be born to and survive her two living daughters is to be given a rational interpretation, it must be that she meant, in the ultimate distribution of the principal of her estate, such after-born grandchildren should stand on a par with any children born to the three grandchildren she already had. This would accomplish "equal justice," in accordance with the "desire" expressed by the testatrix in the second codicil; moreover, it would be a natural distribution on her part, for, although members of different generations, great grand-

children born through the children of her deceased
daughter and grandchildren born through her two living
daughters would, in all probability, be contemporaries,
and this treats them in the distribution of principal as
the testatrix did their respective parents in the distribu-
tion of income, i. e. as though of the same generation;
furthermore, under this construction all the estates
would be bound to vest within a life or lives in being and
twenty-one years thereafter, an object which she seems
to have striven to accomplish.

Of course, the two living daughters of the testatrix
having died without issue, there is no possibility of
grandchildren other than the three particularly named
in the will, and therefore, it is not essential actually to
determine what rights other grandchildren would take
if in being; all we have said upon that subject is simply
to show that the language in the third and fifth codicils
which indicates the testatrix had in mind the possibility
of other grandchildren coming into being, does not neces-
sarily prove that she intended them, if born, to take life-
estates, or interests that would postpone the vesting of
the ultimate remainders beyond the prohibitory period
fixed by the rule. On the contrary, as we have endeav-
ored to show, her language is readily susceptible of the
other construction and suggests an intent to vest all re-
mainders and bring about an ultimate distribution of
principal within the required time.

It is true, as contended by counsel for the appellant,
that the rule against perpetuities is one of law and not
of construction, further, there is authority for his argu-
ment that every part of a will should be read as though
the rule did not exist and "then to the provisions so con-
strued the rule is to be remorselessly applied" [Gray on
Perpetuities, (2d Ed.) sec. 629]. But notwithstanding
these general principles, this court held in Coggins'
App., 124 Pa. 10, 29, per PAXSON, C. J., that "Where the
language of a will leaves us in doubt whether this rule
has been transgressed, we may well resolve the doubt in

favor of vesting (the remainders within the required time), especially when, upon a careful examination of the whole will, we may reasonably infer such to have been the intent of the testator." Again, in Rhodes's Estate, 147 Pa. 227, 231, it is said by Judge PENROSE, in an opinion adopted by this court, per curiam, that where the meaning of a will is not clear and the construction contended for would lead to a perpetuity, this in itself is "a strong reason for supposing it was not intended to be construed in that way." On the whole, as already suggested, we are not convinced that the learned court below erred in holding the rule had not been infringed in the present instance.

The assignments are overruled, and the decree is affirmed; the costs to be paid out of the estate.